CARR, J.
The question depends mainly upon the 18th section of the statute of 'descents: but before I discuss the ’x'meaning of that provision, I will take a brief view of the doctrines of the common law with respect to alienage, and the changes wrought in them by british statutes, so that we may see distinctly the state of the subject, at the passage of our law>.
By the common law, an alien is defined to be, “one born out of the ligeance of the king.” Upon such a person many disabilities were imposed. He could take real estate by contract, but he could not hold it against the king; neither could he transmit it by hereditary descent. He was disabled to take by any act in law; for the law, as lord Hale says, quae nihil frustra facit, will not give him an inheritance or freehold by act in law, for he cannot keep it. The law, therefore, will not give an alien the benefit of either descent, curtesy, dower, or guardianship. His incapacity resembles “that of a person attaint, yet with this difference: the law looks upon a person attaint, as one it takes notice of; and therefore the eldest son attaint over-living his father, though he shall not take b3r descent, yet he shall hinder the descent to the younger son. But if the eldest son be an alien, the law takes no notice of him; and therefore, as he shall not take by descent, so he shall not impede the descent to the younger brother.” There is also what lord Hale calls a consequential, consecutive disability, which reflects to an alien from one, that must derive by or through him, though such one be perchance a natural born subject. Thus, if there be a grand-father a natural born subject, father an alien, and son a subject, and the father dies, and then the grand-father dies intestate, seized of an inheritance; the son cannot inherit his grand-father; because he must derive his descent through his father, the medius ancestor, whose alienage opposes an insurmountable obstacle. So, in collateral descents, if there be three brothers, the eldest an alien, and the two younger natural born subjects; one of the y’ounger brothers dies seized of lands, living the other native born, and also a native born son of the alien brother: this son cannot inherit, though he is capable to *hold and to transmit inheritance, and though he would be heir of his uncle who died seized; but he must derive his descent through his father, and he, as lord Hale expresses it, stands as ‘ ‘a block in the way. ’ ’ In Collingwood v. Pace, where this whole doctrine is so ably treated, the case was, a father alien, and two sons naturalized, one of whom died leaving a son natural born ; and the question was, whether this son should inherit his uncle? He was considered as standing exactly in the shoes of his father, and presenting the question, as between the two brothers, whether they could inherit each other, or were impeded by the alienage of their father? It was adjudged in the exchequer, by seven judges against three, that they could: and the reason given was, that the descent between them was immediate, so that there was no necessity of deriving it through their father.
Whether these doctrines had their root in the feudal tenures, or, as Blackstone thinks, were founded “rather upon a principle of national or civil policy, than upon reasons strictly feudal,” it would be useless to inquire. With a change of times and manners, the rigour of them, and the hardships and injustice produced by them, were felt, and the" statute of 11 and 12 W. 3, ch. 6, was enacted to correct them. That statute cured the mischief, by removing the bar of alien-age both in lineal and collateral descents. I think it clear too, that it contemplated the case of a party claiming through a living ancestor. Those words, “though the father or mother &c. from whom he may derive his title or pedigree, was, is, or shall be born out of the king’s allegiance,” mean nothing more than though the father &c. through whom &c. was, or is, or shall be an alien. This is clearly the meaning put upon it by the statute of 25 G. 2, ch. 39.
Such was the state of the law, when our committee of revisors came to act upon the subject: the harsh features of the common law had been softened down, and parties permitted to make descent, both linea and collateral, through *alien ancestors though living. The object of that *275 committee was to transfuse into our code whatever of sound and wise legislation they found in the english system. With these laws on the subject of alienage before them, they said, that “in making title by descent, it shall be no bar to a party, that any ancestor, through whom he derives his descent from the intestate, is or hath been an alien.” It was contended, that this clause was applied to lineal descent only, leaving collat■eral descents as they stood at common law. It would seem strange, that with the mischief of the common law, and the remedy of the english statutes before them, these law-makers should stop halfway, and leave unredressed so material and obvious a part of the evil. The position was rested on two grounds, 1. That having the statute of W. 3, before them, which so carefully provided for collateral descents, they have departed from the language of that statute; 2. that the terms they have used are peculiarly applicable to lineal descents, and inapplicable to collateral. With respect to the first, it is clear, that they have not followed the language of the english statute; but I do not think that evidence that they meant to depart from the substantial effect of it. The english statute is singularly verbose; employing a vast number of words to express a few ideas. It is no wonder that this example should have been avoided in a law, which seems to have been studiously condensed into the smallest possible compass, compatible with clearness. Let us examine the terms of this clause, and see if they are such as would be naturally used to embrace lineal and exclude collateral descents. “In making title by descent:” does this mean pedigree, blood, extraction, lineage? not at all, in my judgment. Title by descent, is a phrase of the largest and most comprehensive sense; purchase and descent are the only modes of acquiring land. In Co. Litt. 237, a., lord Coke says, “this word (Descents) cometh of the latin word discendere, id est’ ex loco superiore ad inferiorem movere; and in legal understanding it is taken when land &c. after the death of an ancestor, is cast by ^course of law, upon the heir, which the law calleth a descent.” Blackstone, and all the elementary books use the term in the same sense. The title of our law is, “an act to reduce into one the several acts directing the course of descents;” which I understand to mean, the course in which lands shall descend from one to another : the first section of the act says, “that when a person having title to real estate of inheritance, shall die intestate, it shall descend and pass in parcenary, to his kindred, male and female, in the following course.” All going to shew, that wherever in the act the word descent is used, it means the passage of the inheritance, and not the blood, the pedigree. Let us return to the law. “In making title by descent, it shall be no bar to a party, that any ancestor, through whom he derives his descent from the intestate, is or hath been an alien.” “It shall be no bar that any ancestor:” could words be more extensive than these? Where the law saj's it shall be no bar, that any ancestor is an alien, how can we suppose that it means lineal ancestor only? Any ancestor includes both lineal and collateral. It removes the bar as to both; and how can we restrain it? “Through whom he derives his descent from the intestate:” that is, through whom he derives his title by descent; his claim to the estate; the land ; not the blood, the genealogy. ‘ ‘Is or hath been an alien:” is, in the present tense, shews that the law contemplated a claim through a living, as well as a dead alien ancestor. This section then, in my apprehension, is full and complete to remove out of the way the bar of alienage in both lineal and collateral descents, and also to remove any impediment from the life of the ancestor, through whom the descent may be derived.
The objections of the alienage and life of the mother being removed, the case is the common one of a brother of the intestate, and nephews and nieces concurring. He takes per caput; they, per stirpes, the share which their mother would have taken, had she been capable.
The other judges concurred, and the decree was affirmed.